Johnny B. **HERMES**, Plaintiff,

v.

**FEDERAL CROP INSURANCE CORPORATION**, Defendant.

No. 88–1040–C.

United States District Court, D. Kansas.

Jan. 24, 1990.

1

Dan W. Forker, Jr., Reynolds, Peirce, Forker, Suter, O'Neal & Myers, Hutchinson, Kan., for plaintiff.

Stephen K. Lester, Asst. U.S. Atty., Wichita, Kan., for defendant.

## MEMORANDUM AND ORDER

CROW, District Judge.

The case comes before the court on the defendant's motion for summary judgment on all of plaintiff's claims. Plaintiff, Johnny B. Hermes, brought this action to recover on two crop insurance policies issued by defendant, Federal Crop Insurance Corporation (FCIC), in the years of 1984 and 1985. These policies covered wheat and grain sorghum crops planted in Harvey and Reno Counties of Kansas. The FCIC both denies contractual liability on unpaid insurance claims and asserts recoupment for the paid insurance claims on the same allegation that plaintiff misrepresented his insurable interest in certain crops.

In ruling on a motion for summary judgment, the trial court conducts a threshold inquiry of the need for a trial. Without weighing the evidence or determining credibility, the court grants summary judgment when no genuine issue of material fact exists and the movant is entitled to judgment as a matter of law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). Essentially, the inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251–252, 106 S.Ct. at 2511–2512.

An issue of fact is "genuine" if the evidence is significantly probative or more than merely colorable such that a

jury could reasonably return a verdict for the nonmoving party. *Id.* at 248, 106 S.Ct. at 2510. An issue of fact is "material" if proof thereof might affect the outcome of the lawsuit as assessed from the controlling substantive law. 477 U.S. at 249, 106 S.Ct. at 2510. Where reasonable minds would not differ over the import of the evidence and could only reach one conclusion as to the evidence, summary judgment is appropriate. 477 U.S. at 250, 106 S.Ct. at 2511.

■ The movant's initial burden under Fed.R.Civ.P. 56 is to show the absence of evidence to support the nonmoving party's case. *Windon Third Oil and Gas v. Federal Deposit Ins.,* 805 F.2d 342, 345 (10th Cir.1986), *cert. denied* 480 U.S. 947, 107 S.Ct. 1605, 94 L.Ed.2d 791 (1987). The movant must specify those portions of " 'the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits if any,' " which demonstrate the absence of a genuine issue of fact. *Windon,* 805 F.2d at 345 (quoting Fed.R.Civ.P. 56(c)). The movant, however, does not have the burden to prove a negative, that is, to disprove the nonmoving party's evidence. *Id.* at 346. It may be sufficient for the movant to establish that the alleged factual issues are without legal significance. *Dayton Hudson Corp. v. Macerich Real Estate Co.,* 812 F.2d 1319, 1323 (10th Cir.1987).

The opposing party may not rest upon mere allegations or denials in the pleadings but must set forth specific facts supported by the kinds of evidentiary materials listed in Rule 56(c). *Anderson,* 477 U.S. at 250, 106 S.Ct. at 2511. The nonmoving party's evidence is deemed true and all reasonable inferences are drawn in his favor. *Windon,* 805 F.2d at 346. More than a "disfavored procedural shortcut," summary judgment is an important procedure "designed 'to secure the just, speedy and inexpensive determination of every action.' Fed.R. Civ.P. 1." *Celotex Corp. v. Catrett,* 477 U.S. 317, 327, 106 S.Ct. 2548, 2555, 91 L.Ed.2d 265 (1986).

Though the plaintiff accepts the uncontroverted facts as stated by the defendant, he also presents additional questions of fact which he believes preclude summary judgment. The court will take up those questions as they become relevant in the discussion of the plaintiff's individual counts for relief. The court adopts the uncontroverted facts as set forth in the defendant's motion. The pertinent facts will be summarized in the discussion of the plaintiff's individual counts. Before considering those claims, the court will briefly outline some of the relevant law.

The FCIC is a government-owned corporation created as an agency within the Department of Agriculture by the Federal Crop Insurance Act of 1938 (Act). 7 U.S.C. § 1503. Its purpose is to improve "economic stability of agriculture through a sound system of crop insurance." 7 U.S.C. § 1502. Consequently, the FCIC is empowered "to insure producers of agriculture commodities" against losses to their commodities from a variety of natural hazards. 7 U.S.C. § 1508(a). The Secretary of Agriculture and the FCIC are authorized to issue such regulations as are necessary to implement the provisions of the Act. 7 U.S.C. § 1516(b). These regulations set forth the terms and conditions of wheat crop insurance contracts, 7 C.F.R. § 418.1–.7, and of grain sorghum insurance contracts, 7 C.F.R. § 420.1–.7, which bind the insureds. *See Fed. Crop Ins. Corp. v. Merrill,* 332 U.S. 380, 384–85, 68 S.Ct. 1, 3–4, 92 L.Ed. 10 (1947), and *R & R Farm Enterprises v. Federal Crop Ins. Corp.,* 788 F.2d 1148, 1150–51 (5th Cir.1986).

These crop insurance contracts differ in several critical respects from typical property insurance policies. The insureds are not obligated to pay for the coverage until after the crop is grown and harvested. *Glass v. Federal Crop Ins. Corp,* 643 F.Supp. 272, 274 (E.D.Mo.1986). In addition, these crop insurance policies are continuous in that they apply to succeeding crop years unless terminated or cancelled. 7 C.F.R. §§ 418.7(c), (d)(15), 420.7(c), (d)(15).

The policies by regulation define the acreage insured and share insured as follows:

b. The acreage insured for each crop year will be wheat planted on insurable acreage as designated by the acturial table and in which you have a share, as reported by you or as determined by us, whichever we elect.

c. The insured share will be your share as landlord, owner-operator, or tenant in the insured wheat at the time of planting.

7 C.F.R. §§ 418.7(d)(2), 420.7(d)(2). The insured is obligated to report his acreage and share. If this report is not submitted by the required date, the FCIC has the right to elect "to determine by unit the insured acreage, share, and practice or ... deny liability on any unit." 7 C.F.R. §§ 418.-7(d)(3)(c), 420.7(d)(3)(C). As to the matter of concealment or fraud, the policy further provides:

> We [FCIC] may void the contract on all crops insured without affecting your liability for premiums or waiving any right, including the right to collect any amount due us if, *at any time*, you have concealed or misrepresented any material fact or committed any fraud relating to the contract. Such voidance will be *effective as of the beginning of the crop year with respect to which such act or omission occurred.*

20 C.F.R. §§ 418.7(d)(10), 420.7(d)(10) (emphasis supplied). On the force of these clauses, the FCIC has voided the two insurance contracts with plaintiff and presently denies any liability under them and urges alternatively recoupment. The plaintiff apparently does not take issue with the proposition that a misrepresentation of his insured share to the extent alleged by defendant would be material and would have the effect of making the contract voidable. Because of this, the defendant's motion turns upon determining only whether the uncontroverted facts establish such misrepresentations as a matter of law.

## COUNTS I AND II

These counts of the plaintiff's action concern crop insurance policy, # 20–079–26360 (hereinafter Policy A), covering the 1984 grain sorghum crop planted on two parcels of land: the Southeast Quarter (SE/4) of Section Twenty-nine (29) and the Northwest Quarter (NW/4) of Section Thirty-three (33), of Township Twenty-four (24), Range One (1) East, Harvey County, Kansas (hereinafter Tracts I and II). On April 23, 1983, the Garden Plain State Bank filed a mortgage foreclosure action against both of these parcels. Plaintiff then leased the land to Robert Robben in September of 1983 for the consideration of one-third interest in all grown crops. After obtaining judgment, the Bank purchased the land at the sheriff's sale on December 14, 1983, and the sale was confirmed on December 30, 1983. Plaintiff's redemption period was six months running from the date of the sheriff's sale. On June 8, 1984, approximately six days before the redemption period expired, Robben assigned to plaintiff "all rights, title and interest in the 1984 milo crop," including "the right to insure the crop." On June 14, 1984, the sheriff's deed was executed conveying the land to the Bank, as no redemption had occurred.

Plaintiff applied for crop insurance on May 26, 1984, and the application was approved June 7, 1984. Plaintiff reported by telephone to the private insurance agency handling Policy A that he had completed planting 259.1 acres of grain sorghum on Tracts I and II on June 24 and 25, 1984, and that his insured share in the crop was "1.00" or 100%. This information was then recorded on an acreage report, and a copy was sent to plaintiff for him to check its accuracy. On August 14, 1984, the FCIC mailed plaintiff a summary of protection setting forth the crop insured, the reported acreage, the policy holder's share and the net premium due. Plaintiff reported the loss of the insured crop on September 7, 1984, and the claim was inspected by an FCIC employee on September 14th. On October 8, 1986, the FCIC denied these claims and plaintiff's other claims to be described in counts III and IV.

Defendant contends the plaintiff had no insurable interest in the 1984 sorghum crops on Tracts I and II at the time they were planted, since the redemption period had run and the sheriff's deed had been executed. From the premise that there has

been no evidence presented concerning whether the sheriff's deed was delivered to the Bank before the final planting date of June 25, 1984, plaintiff argues his possessory rights under the redemption period continued until this delivery date and were an insurable interest. At the time Robben conveyed back the leasehold interest in the crops, plaintiff was on notice that the only rights he could claim to the land and crops stemmed from his right of redemption. The only issue is whether plaintiff misrepresented that he was the sole owner of the 1984 grain sorghum planted on the foreclosed property after the redemption period had expired and, presumably, before the sheriff's deed was delivered to the Bank.

■ For the proposition that he has the right to remain in possession until the deed is delivered to the purchaser, plaintiff cites as "very clear" authority, K.S.A. 60–2414(a), and *First Federal Savings & Loan Ass'n v. Moulds*, 202 Kan. 557, 451 P.2d 215 (1969). The court does not read either authority to hold that the right of redemption extends until the sheriff's deed is delivered to the purchaser. "The statutory right of redemption is the right a judgment debtor has to regain property he has lost by sale under process." *Southwest State Bank v. Quinn*, 198 Kan. 359, 361, 424 P.2d 620 (1967). Under the statutory provision governing redemption [K.S.A. 60–2414(a)], the former owner is given the right to possess the mortgaged property, including rents and profits gained therefrom, during the redemption period. *Broadhurst Foundation v. New Hope Baptist Society*, 194 Kan. 40, 43, 397 P.2d 360 (1964). The mortgagor's receipt of these monies during the redemption period is intended to aid him in acquiring the amount necessary to redeem the property. *Id.*

The court has not found any authority in Kansas, controlling under the circumstances of this case, which would allow the mortgagor to exercise his right to possession beyond the expiration of the redemption period and until the delivery of the sheriff's deed to the purchaser. In a judicial sale, "the purchaser obtains the title of all the parties to the suit, that is, of mortgagee and mortgagor...." *Ferguson v. Cloon*, 89 Kan. 202, 203–04, 131 Pac. 144 (1913). If the right of redemption, which makes the judicial sale conditional, is not exercised within the prescribed time period, "the right to a conveyance becomes absolute without any further sale or other act to be performed by anyone." 55 Am. Jur.2d, Mortgages, § 784 (1971). The purchaser's title becomes perfected with the execution and delivery of the deed. Though the act of perfection may have cut off certain competing and inferior interests to the property, there is no authority that a mortgagor has an inferior possessory interest in the land after the redemption period has expired which is subject to termination only upon the perfection of the purchaser's title.

■ Plaintiff's right to redemption and the concomitant right to possession and profits ended when the statutory redemption period ran on June 14, 1984. Consequently, plaintiff had no possessory interest in the land or the right to profits gained from it after that date, and more particularly, on June 24 and 25, 1984, the dates that the insured grain sorghum was planted. Whatever interest plaintiff may have had in the planted crops at that time does not matter greatly, as the bank then had an interest in any insured crop to be planted and the plaintiff could no longer be the sole owner as he continued to represent. For this reason, the defendant's motion for summary judgment is granted as to plaintiff's counts I and II.

## COUNT III

This count of the plaintiff's action concerns crop insurance policy, # 20–155–26360 (hereinafter Policy B), covering the 1984 grain sorghum crop planted on the West Half (W/2) of Section Twenty-Two (22), Township Twenty-six (26), Range Four (4) West of the 6th P.M., Reno County, Kansas (hereinafter Tract III). Plaintiff, his wife and his son, Scott, leased this land from Walter Back on January 6, 1983, for a term of one year. This lease was apparently superseded by a later agree-

ment dated September 24, 1983, wherein the same land was leased only by Scott Hermes from Walter Back on a year-to-year basis.

On May 29, 1984, plaintiff applied for crop insurance on the 1984 grain sorghum crop to be grown on this leased land. Scott Hermes assigned in writing his "rights, title and interest in the 1984 Milo crop to be planted on the Walter Back Farm" to plaintiff on June 8, 1984. Plaintiff reported by telephone to the private insurance agency handling Policy B that he had completed planting grain sorghum on Tract III on June 28 and 29, 1984, and that his insured share in the crop was "1.00" or 100%. In similar fashion to counts I and II, the information was recorded, and a copy sent to plaintiff for him to make any corrections. The FCIC later mailed plaintiff a summary of protection setting forth the crop insured, the reported acreage, the policyholder's share in the crop and the net premium due. Plaintiff reported the loss of this crop in September of 1984, and this claim was inspected by an FCIC employee on September 14th. The FCIC rejected this claim on October 8, 1986, for the reason that plaintiff had misrepresented his insurable interest in the crop.

■ The FCIC first argues that plaintiff's misrepresentations in counts I and II concerning crops insured under Policy A also justify voiding coverage under Policy B for the crops involved in count III. Other than making this general statement, the FCIC does not offer any contractual or legal basis for such a conclusion. The court does not understand ¶ 10 of the insurance policy to authorize the FCIC to void a contract with the insured because of the insured's misrepresentation under a different contract. Whether or not the FCIC's position is consistent with a principle recognized under general insurance law is a matter the defendant has not argued nor established.

■ The FCIC next contends the 1984 crop interest assigned to plaintiff does not fit the policy definition of an insured share as constituting a "landlord, owner-operator, or tenant in the insured grain sorg-

hum...." 7 C.F.R. § 420.7(d)(2)(c). Since the FCIC is to insure "producers of agricultural commodities," 7 U.S.C. § 1508(a), defendant argues that plaintiff is not a producer in the absence of evidence showing plaintiff was involved in renting the land, buying the seed or fertilizer, or planting of the crop. In response, plaintiff construes the assignment as giving him all rights in the lease for the 1984 milo crop which thereby made him a tenant for that crop. The interest assigned to plaintiff is insurable since its existence was a benefit to him and its destruction was a loss. *Parks v. Federal Crop Ins. Corp.,* 416 F.2d 833 (7th Cir.1969). Plaintiff became the sole and exclusive interest holder in the 1984 milo crop as a result of the assignment. Under the facts pleaded in count III, defendant has not shown a misrepresentation. Nevertheless, plaintiff's recovery may still be precluded on this count if a misrepresentation occurred under the facts of count IV which would have the effect of voiding Policy B.

## COUNT IV

This count of the plaintiff's action concerns crop insurance policy, # 20–155–26360 (Policy B), covering his 1985 wheat crop planted on the Northeast Quarter (NE/4) of Section Twelve (12), Township Twenty-six (26) South, Range Five (5) West of 6th P.M., Reno County, Kansas (hereinafter Tract IV). Plaintiff and his wife leased this land to their son, Scott, on September 21, 1983. The lease provided for automatic annual renewal assuming no timely notice of termination was submitted. As landlord, plaintiff was to receive one-third of any crop grown on the leased land.

On February 17, 1984, plaintiff applied for crop insurance to cover the 1984 wheat crop on Tract IV. On May 9, 1984, plaintiff reported a loss to 160.6 acres of this wheat. Plaintiff signed the claim for indemnity on this loss which listed his insured share as "1.00" or 100%. The form also stated plaintiff's intention to replant four of these fields to alfalfa or grain sorghum. On July 13, 1984, plaintiff in-

**1298**

formed the private insurance agency handling Policy B that he had finished planting grain sorghum on 108.5 acres of Tract IV and that his insured share in the crop was "1.00" or 100%. On November 15, 1984, plaintiff informed the insurance agency that wheat had been planted on the same 108.5 acres, that his insured share was one-third, and that Scott Hermes would be sharing in the crop. Plaintiff reported a loss to the insured wheat on June 26, 1985. The FCIC rejected his claim for loss to the 1985 crop because of plaintiff's misrepresentations of his insured share in the 1984 crops.

■ Relying on 7 C.F.R. § 418.7(d)(10), the FCIC asserts it can void a contract on insured crops for misrepresentations, under the same contract, made in regards to crops insured in previous years. As written, this provision of the contract authorizes the FCIC, upon learning of a misrepresentation made "at any time" relating to a particular contract, to void that contract effective as of the crop year with respect to which the misrepresentation occurred. Based upon a reasonable construction of this provision and the plaintiff's silence on this matter, the court accepts the FCIC's position as the law of the case.

■ Plaintiff focuses his response again on proving he did not misrepresent his insured share. Plaintiff points to the definition of "unit" found in the insurance contract in arguing apparently that he can rightfully report any interest of a family member as part of his insured share. The pertinent portion of this definition of "unit" provides: "We may consider any acreage and share thereof reported by or for your spouse or child or any member of your household to be your bona fide share or the bona fide share of any other person having an interest therein." Plaintiff's construction of the policy is unreasonable. The policy obligates the insured to report his share and not any unit. The FCIC has the discretion to determine insured acreage, share or practice on the basis of a unit. This authority of the FCIC allows it in determining units to pierce what is reported as a share held by a family member and

to treat it as the "bona fide" share of another. Nothing about these provisions allow an insured in reporting his share to ignore the terms of a written lease with a family member which sets forth the respective shares of a crop. Plaintiff's argument is without merit.

Based on the plaintiff's misrepresentations of his insured share in the 1984 wheat crop and in the 1984 grain sorghum crop covered by Policy B, defendant was justified in voiding this entire insurance contract effective from the beginning of the 1984 wheat crop year. Consequently, defendant is entitled to summary judgment on counts III and IV.

IT IS THEREFORE ORDERED that the defendant's motion for summary judgment is granted.